# OBERLY, JENNINGS & RHODUNDA, P.A.

1220 Market Street – Suite 710
P. O. Box 2054
Wilmington, Delaware 19899

**Charles M. Oberly, III**                                                                                      (302) 576-2000
**Kathleen M. Jennings**                                                                                  Fax  (302) 576-2004
**William J. Rhodunda, Jr.**                                                                                E.I.No. 51-0364261
    ------------
**Karen V. Sullivan**

Writer's e-mail coberly@ojlaw.com

June 19, 2006

The Honorable Kent A. Jordan
United States District Court
844 North King Street
Wilmington, DE 19801

Re:  **United States v. Norman W. Barrett – Cr.A. No. 05-67**

Dear Judge Jordan:

   On June 22, 2006, Norman Barrett will appear before you to be sentenced on one count of tax evasion in violation of 26 U.S.C. Sec. 7201.  Mr. Barrett pled guilty to the offense on February 9, 2006, pursuant to a Memorandum of Plea Agreement entered into with the United States.  As part of the Agreement, Mr. Barrett agreed to file amended tax returns for the years 1999, 2000, and 2001.  He has now done so.  He further agreed to repay back taxes at the time he filed the amended returns.  As of June 22, 2006, it is expected that Mr. Barrett will have paid a substantial portion, if not all, of the back taxes.  The amount owed as a result of penalties and interest will be paid as soon as Mr. Barrett is able to do so.

   On April 7, 2006, counsel was provided a copy of the Presentence Report prepared by Jean A. Lubinsky, U.S. Probation Officer.  It has been reviewed with Mr. Barrett and, with the exception of corrections to figures cited in paragraphs 10 and 11 of the report, is essentially accurate in its presentation of the facts and circumstances of this offense.  Using the Guidelines Manual, it is agreed that the total offense level is 13, which exposes Mr. Barrett to a sentence of 12 to 18 months as a Criminal History Category I offender.  For the reasons set forth below, it is respectfully requested that Mr. Barrett not be incarcerated or, but that he instead be sentenced to a period of home confinement,coupled with a community service component.

The Honorable Kent A. Jordan
June 19, 2006
Page 2

## The Applicable Law

        The United States Supreme Court decision in *United States v. Booker*, 5430 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) has altered the sentencing authority of the Court by providing the sentencing judge with much greater discretion that had been the case. No longer are judges straight-jacketed by the Sentencing Guidelines, which are now advisory and subject to the sentencing goals set forth at 18 U.S.C. Sec. 3553(a). *United States v. Cooper*, 437 F.3d 324 (3rd Cir., 2006). The overriding principle and basic mandate of Section 3553(a) is that the Court "impose a sentence sufficient, but not greater than necessary, to comply with "the four purposes of sentencing set forth in subsection (2) of Section 3553(a). These factors are summarized as follows:

    (a)    retribution ("to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense");

    (b)    deterrence;

    (c)    incapacitation ("to protect the public from further crimes"); and

    (d)    rehabilitation

        In determining the sentence minimally sufficient to meet the overriding mandate as set forth above, the Court shall consider the remaining factors listed in Section 3553(a) which are:

    (1)    "the nature and circumstances of the offense and the history and characteristics of the defendant";

    (2)    "the kinds of sentences available";

    (3)    the guidelines and policy statements issued by the Sentencing Commission, including the now advisory guideline range;

    (4)    the need to avoid unwarranted sentencing disparity; and

    (5)    the need to provide for restitution

        In light of *Booker* it is now clear that the guidelines are only the third of five equally important factors in determining the minimally sufficient sentence. Such was the point emphasized by Justice Scalia in his *Booker* dissent where he states:

The Honorable Kent A. Jordan
June 19, 2006
Page 3

> "Thus, logic compels the conclusion that the sentencing judge, after considering the recited factors (including the guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range. If the majority thought otherwise – if it thought the Guidelines not only had to be 'considered' (as the amputated statute requires) but had generally to be followed – its opinion would surely say so."
>
> *Booker*, 125 S.Ct. at 791
> *See also, United States v. Ranum*,
> 353 F.Supp. 984, 986 (E.D. Wis. Jan. 19, 2005)

### The Four Purposes of 18 U.S.C. Sec. 3553(a)(2) Sentencing Mandate

Subsection (a)(2) sets forth four purposes of sentencing. Each is addressed below as it pertains to Norman Barrett:

1. Retribution

In all criminal cases, one of the primary purposes of the law is to provide for a penalty that reflects the seriousness of the offense, prompts respect for the law, and provides for a just punishment under the circumstances. Although the crime committed by Norman Barrett is frequently characterized as a white collar crime with no particular victim, both counsel and Mr. Barrett understand and appreciate that the Court must fashion a sentence that takes into account the above-mentioned factors. It is submitted, however, that a period of incarceration as set forth in the guidelines for an offense of this nature is not required in this particular case. Norman Barrett is almost 61 years of age. Until this particular offense, he had never been convicted of any criminal offense. He is a life long resident of the State of Delaware and, until recently, was successful in his line of work. He graduated from Caesar Rodney High School in 1963 and joined the United States Army in August of that year. He received a top secret – crypto clearance and served the United States in Vietnam, Germany, Turkey, and England at a time when many young men took steps to avoid military service. He received an honorable discharge in July of 1967. He then entered Delaware State College in September of 1968 and majored in accounting. He graduated with honors in 1972. He is married and is the father of Rebecca, who was married on June 17, 2006. In 1982, Mr. Barrett became the sole proprietor of his own business until September of 2002. He then sold the business to Lank, Johnson & Tull, who in turn employed him. It was during this period of time that Mr. Barrett made a series of foolish and unwise decisions that lead him to this Court. The result was Norman Barrett's plea to a felony charge on February 9, 2006. The impact of that plea is having a devastating impact upon Mr. Barrett. No matter what this Court does insofar as sentencing is concerned, the following penalties will be paid by Mr. Barrett:

The Honorable Kent A. Jordan
June 19, 2006
Page 4

      a.    The automatic expulsion by the State of Delaware Board of Accounting, which governs all CPA and accountants in the State;

      b.    The expulsion by the Delaware Society of CPAs;

      c.    The expulsion by the American Institute of Certified Public Accounts, which issues the CPA certificates that govern industry;

      d.    Suspension from practicing before the IRS, which will then limit Mr. Barrett's future employment – counsel has attached hereto a copy of Title 31 – Code of Federal Regulations, Subtitle A, Part 10, Revised June 20, 2005, Section 10.24;

      e.    Substantial penalties and interest – Although Mr. Barrett has made arrangements to repay his full tax liability, he still faces substantial penalties and interest, which will approximate an additional $100,000.00;

      f.    Loss of reputation – The arrest of Mr. Barrett was publicly reported in the local newspapers causing embarrassment, shame, and humiliation to Mr. Barrett; and

      g.    Loss of various civil rights associated with the entry of a guilty plea.

Against this backdrop it is submitted that the sentence of 12 to 18 months is not necessary to reflect the seriousness of the offense.

    2. <u>Deterrence</u>

It is submitted that it is unlikely that a period of incarceration of 12 to 18 months is going to deter anyone else in Norman Barrett's situation from committing the same or similar crime to which he has pled guilty. If the loss of reputation, profession, and the huge financial penalties are not sufficient to deter individuals such as Mr. Barrett, it is unlikely that a period of incarceration of a year or more is going to deter others.

    3. <u>Incapacitation</u>

Incarcerating Mr. Barrett will not protect the public from any further crimes of the nature for which he is being sentenced.

The Honorable Kent A. Jordan
June 19, 2006
Page 5

    4. <u>Rehabilitation</u>

While many individuals need incarceration in order to rehabilitate themselves, it is submitted there are no issues requiring additional education or vocational training, medical care, or other correctional treatment that will serve to rehabilitate Mr. Barrett. He is not going to be able to resume his profession and, at his age, has little hope of securing future employment that will provide him anywhere near the standard of income to which he has previously aspired and lived.

**<u>Section 3553(a) Factors to be considered in complying with the Sentencing Mandate</u>**

In addition to the four main purposes of sentencing set forth above, the Court is required to consider several additional factors listed in Section 3553(a). These factors are:

1. <u>The nature and circumstances of the offense and history/characteristics of the defendant</u>.

The nature and circumstances of the offense and personal characteristics of Norman Barrett has been noted above. In addition to those facts set forth above, counsel notes that approximately sixty-nine different people have written to the Court pleading for some form of leniency in the sentencing of Norman Barrett. While it would serve no purpose to review each and every one of the letters, certain letters deserve to be highlighted and noted. Specifically, the Court's attention is called to the following letters:

Robert Lank – Mr. Lank is Norman Barrett's business partner. He is the person who purchased the accounting business and has been a friend of Mr. Barrett's for a number of years. He describes Norman Barrett as a very fine man who "helps anyone with a problem".

Elaine Barrett – Elaine is Norman Barrett's wife. Her letter notes how Norman volunteered to serve in the United States Army after high school and went to Vietnam. She characterizes him as a hard working man with "limitless devotion to clients". He routinely worked 12 to 16 hours a day. He has always looked at for the benefit of others, even saving an individual from drowning once during a vacation. No one knows Norman Barrett better than his wife. She characterizes his current mental state as one in which he "will forever punish himself by what he has done to his cherished daughter". While the impact of crime on others is true in all cases, it is nevertheless is a factor that should be taken into consideration.

George Cox – Mr. Cox, who currently lives in Florida, is Norman Barrett's best friend. They enlisted in the Army together and served as best man in each other's wedding. In 2005, despite his current problems, Norman Barrett was there to assist Mr. Cox during medical needs of his family.

   Thomas Golder – Lieutenant of the Delaware State Police, Retired
   Mr. Golder, who made his living enforcing the laws of the State of Delaware, describes Norman Barrett as a man "I have never known . . . to be dishonest or untrustworthy." Knowing the impact of prison, the realities of sentencing, and the need to send the message in some cases, Lt. Golder makes the following suggestion in his letter: "As an alternative, if possible, I believe that community service would better serve him and our community."

   Melissa Chambers – Melissa's letter describes how Norman Barrett was a father figure to her husband, Randy. She describes Norman Barrett as gentle, affectionate, humorous, compassionate, giving, devoted, faithful, and full of charity. Her husband, Randy, who also wrote a letter, notes that Norman Barrett essentially became a father figure to him after he lost his own father at age 9.

   Gene and Sue Smith – former clients who are forever grateful of the support the received from Norman Barrett when their own son became ill with cancer.

   Jane Golder – Norman Barrett's sister states: "I can tell you firsthand, he is very remorseful, ashamed, and embarrassed for what he has done."

   Roberta Schmittinger – Mrs. Schmittinger also attests to the gentle and caring nature of Norman Barrett, stating: "When my mother became widowed after nearly four decades of marriage and was overwhelmed at the task of sorting out her finances, Mr. Barrett helped her through what would otherwise have been an unbearable task."

   Sandra Autman – Mrs. Autman is the mother of Clayton, who married Norman Barrett's daughter, Rachel, on June 17, 2006. Ms. Autman has been a Deputy Prothonotary for the Superior Court of New Castle County for nineteen and one-half years. She has never written a letter on the behalf of anyone awaiting sentencing. She proclaims: "He is no danger to the community."

   Rachel Barrett – The letter from Rachel Barrett perhaps best sums up her father. She describes him as a wonderful father, a caring father, and a devoted husband.

   Edward C. Atkins – Retired Maryland State Police Officer – Mr. Atkins has been a friend for many years and also describes Mr. Barrett has a good man.

   Edward B. Sanstrom – Retired United States Air Force – Mr. Sanstrom has a thirty year friendship with Norman Barrett and describes in glowing terms.

   The sixty-nine letters received by the Court are largely from individuals who have known Norman Barrett for many years. A personal history of a man who, but for this particular

The Honorable Kent A. Jordan
June 19, 2006
Page 7

matter, has lived an exemplary life. In all aspects he has been a loyal and devoted friend. He has served his country well and has been a good husband and father. It is truly unfortunate that he made the mistake of judgment that lead him to this Court.

### 2. Kinds of sentences available

In light of the *Booker* decision, incarceration is no longer mandated. There are numerous forms of sentencing that can be crafted by this Court that will take into account the many positive aspects of Norman Barrett's life. House arrest is the one that comes first to mind. House arrest, coupled with community service for a period of time, would both serve society's interest and constitute an additional penalty for his offense. The array of possible sentencing options is as broad as the Court's imagination. Mr. Barrett can be punished and still return something to society that a sentence of incarceration simply will not permit.

### 3. Sentencing Guidelines

The Guidelines are clear in their application to the facts of this case. A sentence of 12 to 18 months is what the Guidelines suggest. The Guideline range, it is submitted, must be considered in light of the other facts and circumstances, all of which are now equally important.

### 4. The need to avoid unwarranted sentence disparity

Until the *Booker* decision was decided, the Court had very little leeway in sentencing. *Booker* has only been the law for approximately one year. Norman Barrett's sentencing should be considered in light of *Booker*. Those sentences prior to *Booker* were subject to the Guidelines, which were essentially mandated as the sentence to be imposed. A sentence of house arrest with community service would not suggest unwarranted disparity in sentencing. Each individual who comes before this Court must stand on his/her own merits and history. Norman Barrett presents to this Court a life well lived for 60+ years. If other individuals similarly come before this Court at some time in the future and have made the same mistakes or errors Mr. Barrett has made, counsel trusts the Court will make fair and just decisions based upon the individual facts of each case. The facts of this case, are respectfully submitted, do not mandate the advisory sentence suggested by the Guidelines.

### 5. Need to provide restitution

The victim in this case is the United States of America. Norman Barrett has made arrangements to pay back the full amount of taxes due. The Government will be made whole. In addition, he will be required to pay penalties and interest, the final amount to be determined. In any event, he will pay back to the United States more than he failed to pay in the first instance.

The Honorable Kent A. Jordan
June 19, 2006
Page 8

      6. <u>Sentence recommendation</u>

      There is no more difficult task imposed upon a member of the judiciary than to determine the appropriate sentence of someone who has committed an offense. While there are numerous cases in which the sentencing options are more easily imposed because of the serious nature of the crime, white collar cases present particular difficulties to judges. Very often the individuals committing such offenses are not your typical criminal. Although motivated by a variety of reasons, they have nevertheless committed offenses that require them to appear before the Court. The Court can do nothing more than take into account all the factors that are relevant to a particular defendant and the offense committed. In this case, Norman Barrett pled guilty to tax evasion in violation of 26 U.S.C. Sec. 7201. He committed that offense. There is no purpose in trying to make excuses for his problem with the IRS. Nevertheless, in determining Norman Barrett's sentence, it is respectfully requested that the Court carefully consider his lifetime of good deeds and service to his country. When all these factors are taken into consideration and weighed, it is submitted that a just and fair sentence does not require incarceration.

      Respectfully submitted,

      */s/ Charles M. Oberly, III*

      **CHARLES M. OBERLY, III (I.D. #743)**

CMO,III/dq

Enclosure

cc: Edmond Falgowski, AUSA